# UNITED STATES BANKRUPTCY COURT FOR
# THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| In re:<br><br>**ORECK CORPORATION,** *et al.*,[1]<br><br>Debtors. | Case No. 13-04006<br>Chapter 11<br>Judge Lundin<br><br>**(Jointly Administered)**<br><br>Hearing: November 4, 2013 |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER CONFIRMING AMENDED JOINT PLAN OF LIQUIDATION

The above-captioned debtors and debtors-in-possession (the "**Debtors**") having filed the *Amended Joint Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code Proposed by the Debtors and the Official Committee of Unsecured Creditors*, dated September 19, 2014 [Docket No. 1545] (the "**Plan**"), as supplemented by the Liquidating Trust Agreement (the "**Liquidating Trust Agreement**") [Docket No. 1617] and the corresponding disclosure statement [Docket No. 1544] (the "**Disclosure Statement**"); and the Court, having entered the *Order (a) Approving Amended Disclosure Statement for Joint Amended Chapter 11 Plan of Liquidation of Oreck Corporation and its Affiliated Debtors and Debtors-in-Possession,(b) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Joint Amended Chapter 11 Plan of Liquidation, (c) Scheduling a Hearing on Confirmation of the Joint Amended Chapter 11 Plan of Liquidation and (d) Approving Related Notice Procedures* [Docket No. 1551] (the "**Disclosure Statement Order**"); and Karlen Williams Graybill Advertising,

---

[1] The Debtors are as follows: O Corp Corporation f/k/a Oreck Corporation, ASP O Inc. f/k/a ASP Oreck, Inc., O Direct, LLC f/k/a Oreck Direct, LLC, O Merchandising, LLC f/k/a Oreck Merchandising, LLC, O Homecare, LLC f/k/a Oreck HomeCare, LLC, O Call Center, LLC f/k/a Vecteur, LLC, Oreck Holdings, LLC f/k/a Oreck Holdings, LLC, O Manufacturing Company f/k/a Oreck Manufacturing Company, and O Sales, LLC f/k/a Oreck Sales, LLC.

LLC having filed the *Limited Objection of Karlen Williams Graybill Advertising, LLC to Confirmation of the Official Committee of Unsecured Creditors and Debtors' Amended Joint Plan of Liquidation* [Docket No. 1615]; and the Plan Proponents having received informal objections to the Plan from the following parties: (1) Liberty (as defined herein); (2) the Class Action Plaintiffs (as defined herein); and (3) Royal (as defined herein); and the Court, having considered the Plan, the Disclosure Statement, the Certificate of Service of the Plan and Disclosure Statement [Docket No. 1577], and the Ballot Report [Docket No. 1629] (the "**Ballot Report**"); and the Court having considered the arguments and representations of counsel, and the evidence proffered and/or adduced at the hearing held November 4, 2014 at 9:00 a.m. (CT) to consider confirmation of the Plan (the "**Confirmation Hearing**"); and the Court, having taken judicial notice of the docket in the Chapter 11 Cases (defined below) maintained by the Clerk of the Court, including all pleadings and other documents filed, and all orders entered; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY FINDS AS FOLLOWS:**

(a) **Chapter 11 Case**. On May 6, 2013 (the "**Petition Date**"), the Debtors commenced these cases by each filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code (collectively, the "**Chapter 11 Cases**"). The Debtors were each qualified, and are qualified, to be a debtor under section 109(d) of the Bankruptcy Code.

(b) **Sale of Assets**. On May 16, 2013, the Debtors filed a Motion Pursuant to 11 U.S.C. §§ 363(b), (f), (k), and (m), and 365 and Fed. R. Bankr. 2002, 6004, and 6006, to (i) Approve (A) the Sale Transaction Pursuant to the Asset Purchase Agreement with Oreck Acquisition Holdings, Free and Clear of Claims, Liens, Encumbrances, and Other Interests; (B) the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (ii) (A) Establishing Sale and Bidding Procedures; and (B) Schedule a Sale Approval Hearing [Docket No. 93] (the "**Sale Motion**"). On June 20, 2013, the Court entered an order authorizing the sale procedures proposed by the Debtors [Docket No. 361] (the "**Sale Procedures Order**"). Pursuant to the Sale Procedures Order, the Debtors conducted a sale process and auction, the

result of which was the selection of the bid of OAC Acquisition Company, LLC and Royal Appliance Mfg. Co. (collectively, "**Royal**") for $17,250,000, as the winning bidder for the Debtors' assets. On July 22, 2013, the Court entered an order [Docket No. 617] (the "**Sale Order**") approving the sale of the Debtors' assets to Royal pursuant to an asset purchase agreement between the Debtors and Royal (the "**Royal APA**"), which sale closed on July 24, 2013 (the "**Closing Date**"). A copy of the final Royal APA was filed with the Court on August 1, 2013 [Docket No. 646]. The Sale Order and Royal APA (as amended and supplemented) set forth which of the Debtors' assets were acquired by Royal or assigned to a third party (the "**Purchased Assets**"). After the Closing Date, several disputes arose between the Debtors and Royal regarding the nature and extent of the Purchased Assets, including formal litigation and an appeal related to QVC (the "**QVC Litigation**"), and informal disputes regarding funds received or applied by the Debtors after the Closing Date that Royal believes constitute Purchased Assets (collectively, the "**Purchased Asset Disputes**"). The Purchased Asset Disputes will be resolved after the Effective Date by this Court or any applicable appellate court. The rights and claims of all parties with respect to the Royal APA, the Sale Order and/or the Purchased Assets Disputes are fully reserved.

(c) **Filing of Plan and Disclosure Statement**. On September 24, 2014, the Debtors filed the Disclosure Statement and Plan. Capitalized terms used but not defined herein shall have the meanings set forth in the Plan. All references in the Disclosure Statement and Plan to a "Plan Support Agreement" are hereby stricken.

(d) **Judicial Notice**. The Court takes judicial notice of all materials filed on the docket of these Chapter 11 Cases.

(e) **Solicitation and Notice**. As required by the Disclosure Statement Order, the Debtors have provided proper notice of the Confirmation Hearing and votes on the Plan by timely serving (a) the Disclosure Statement Order, (b) the Disclosure Statement, (c) the Plan and, where applicable, (d) a ballot for accepting or rejecting the Plan: (i) on all Holders of Claims that are entitled to vote on the Plan; and (ii) on all Holders of Claims and Interests that are not

entitled to vote on the Plan (collectively as the "**Solicitation Package**") in accordance with the Disclosure Statement Order, the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and the Bankruptcy Code.

(f) **Acceptances of the Plan**. As evidenced by the Ballot Report, all Classes of Creditors entitled to vote on the Plan have accepted the Plan.

(g) **Rejection of Executory Contracts and Unexpired Leases**. Subject to the provisions of paragraph 5 of this Confirmation Order, the provisions of Article V of the Plan governing the rejection of executory contacts and unexpired leases satisfy the requirements of all applicable provisions of section 365 of the Bankruptcy Code. Each rejection of an executory contract or unexpired lease under the Plan shall be legal, valid and binding upon all non-Debtor parties to such executory contract or unexpired lease, all to the same extent as if the rejection had been effectuated by motion.

(h) **Satisfaction of Confirmation Requirements**. The Plan satisfies the requirements for confirmation for each of the Chapter 11 Cases set forth in sections 1129(a) and (b) of the Bankruptcy Code, as set forth below:

11 U.S.C. § 1129(a)(1). The Plan complies with all applicable provisions of the Bankruptcy Code, including sections 1122 and 1123 of the Bankruptcy Code.

11 U.S.C. § 1122. Each Claim or Interest placed in a particular Class under the Plan is substantially similar to the other claims or interests in that Class. In addition, valid business, legal and factual reasons exist for the separate classification of each of the classes of Claims and Interests created under the Plan, and there is no unfair discrimination between or among holders of Claims and Interests.

11 U.S.C. § 1123. Article III of the Plan classifies Claims and Interests into three different Classes (except for Administrative Claims and Priority Claims, which need not be classified), provides the same treatment for Claims and Interests within each Class (except to the extent agreed to by the Holder of a Claim), and provides adequate means for the Plan's

implementation. 11 U.S.C. § 1123(a)(1)-(5). The evidence adduced at the Confirmation Hearing demonstrates that the Plan satisfies 11 U.S.C. § 1123(a)(6).

11 U.S.C. § 1129(a)(2). The Debtors have complied with all of the Bankruptcy Code's applicable provisions, including but not limited to conducting the solicitation of acceptances and rejections of the Plan in accordance with the Bankruptcy Code, the Bankruptcy Rules and the Disclosure Statement Order.

11 U.S.C. § 1129(a)(3). The Plan and the transactions contemplated by the Plan are the result of arm's-length, good faith negotiations between the Debtors and parties to such transactions.

11 U.S.C. § 1129(a)(4). The Plan appropriately provides for all payments for services in connection with these Chapter 11 Cases to be subject to Court approval as reasonable and therefore satisfies section 1129(a)(4) of the Bankruptcy Code. The Debtors have demonstrated sufficient funds on hand to make the payments required by section 1129(a)(4) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(5). The requirements of section 1129(a)(5) of the Bankruptcy Code are not applicable to the Plan because the Plan contemplates that the Debtors will be liquidated on the Effective Date.

11 U.S.C. § 1129(a)(6). The requirements of section 1129(a)(6) of the Bankruptcy Code are not applicable to the Plan because the Debtors are not subject to any regulatory commission with jurisdiction over the rates of the Debtors.

11 U.S.C. § 1129(a)(7):

i. All Classes of Creditors entitled to vote on the Plan have accepted the Plan.

ii. The requirements of section 1129(a)(7) of the Bankruptcy Code are satisfied with respect to Holders of Claims in Class 1 and Class 2 and Holders of Interests in Class 3 who were deemed to reject the Plan, because the distribution to these Classes is not less than the amount that such Holders would receive or retain if the Debtor were liquidated under

Chapter 7.  Holders of Interests in Class 3 are not receiving any distribution under the Plan (and would not receive or retain any property in a Chapter 7 case).

    <u>11 U.S.C. § 1129(a)(8) / 11 U.S.C. § 1129(b)</u>:

    i. Class 1 (Priority Non-Tax Claims) (with respect to Debtor O HomeCare, LLC only) and Class 2 (General Unsecured Claims) are Impaired under the Plan and have voted to accept the Plan.

    ii. Class 3 (Interests) is Impaired under the Plan and will not receive nor retain property under the Plan.  Class 3 is deemed to reject the Plan.  Confirmation of the Plan, notwithstanding the deemed rejection of the Plan by Class 3, is appropriate because, among other things, with respect to Class 3, no holder of any interest that is junior to the Interests of Class 3 will receive or retain any property under the Plan on account of such junior interests.  Further, no Class of Claims senior to Class 3 will receive more than the full Allowed amount of its Claim(s).  The treatment of Class 3 satisfies the requirements of section 1129 of the Bankruptcy Code; such treatment does not discriminate unfairly and is fair and equitable within the meaning of section 1129(b)(2)(C) of the Bankruptcy Code.

    <u>11 U.S.C. § 1129(a)(9)</u>.  The treatment of Administrative Claims and Priority Claims under the Plan satisfies the requirements of section 1129(a)(9) of the Bankruptcy Code for all of the Debtors except possibly for O Direct, LLC f/k/a Oreck Direct, LLC.  Since O Direct has no assets, to the extent that there will be an Allowed Administrative Claim or Priority Claim specific to that Debtor after the entry of this Confirmation Order, the Liquidating Trustee will cause a motion to dismiss be filed with notice limited to the creditors of the O Direct case.  In all other respects, the Plan provides that all Administrative Claims and Priority Claims will be paid in full, except to the extent the holders of such Claims have agreed otherwise pursuant to Article III of the Plan.

    <u>11 U.S.C. § 1129(a)(10)</u>.  Class 1 (with respect to Debtor O HomeCare, LLC only) and Class 2, which are Impaired and entitled to vote on the Plan, have voted to accept the

Plan.  The Plan therefore satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(11).  The Plan is feasible and therefore satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.  The Plan provides for liquidation of the Debtors' assets and the wind-down of the Debtors' business, and provides the means to make a distribution to the holders of Allowed Claims.

11 U.S.C. § 1129(a)(12).  The Plan provides for payment in full of all fees payable under 28 U.S.C. § 1930.  The Plan thus satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

11 U.S.C. § 1129(a)(13).  The requirements of section 1129(a)(13) of the Bankruptcy Code are not applicable to the Debtors.

11 U.S.C. § 1129(a)(14) and (15).  These statutes apply only to individual debtors and thus are inapplicable to confirmation of the Plan.

11 U.S.C. § 1129(a)(16).  The requirements of section 1129(a)(16) of the Bankruptcy Code are not applicable to confirmation of the Plan because the Debtors are not a nonprofit entity or trust.

11 U.S.C. § 1129(d).  The requirements of section 1129(d) of the Bankruptcy Code are satisfied because the principal purpose of the Plan is not the avoidance of taxes.

(i)     **Settlements, Releases, Injunction and Related Provisions**.  The settlements, releases, injunctions and related provisions set forth in Article VIII of the Plan, as amended in this Confirmation Order, are, under the circumstances presented, fair, reasonable and necessary to the successful effectuation of the Plan.

(j)     **Factual Findings**.  All facts necessary to support confirmation of the Plan have been demonstrated on the record of the Confirmation Hearing, the submissions made in support of confirmation, and on the record of the Chapter 11 Cases.

**THE COURT HEREBY CONCLUDES THAT:**

1. **Venue; Core Proceeding; Exclusive Jurisdiction**. Venue of the Chapter 11 Case in this district was proper as of the Petition Date and continues to be proper before the Court pursuant to 28 U.S.C. § 1408. Confirmation of the Plan is a core matter under 28 U.S.C. § 157(b)(2)(L). The Court has jurisdiction over these cases pursuant to 28 U.S.C. §§ 157 and 1334, and the Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2. **Burden of Proof**. The Proponents have the burden of proving the elements under sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, and the Debtors have met that burden as stated by the Court on the record at the Confirmation Hearing and as further found and determined herein.

3. **Solicitation and Notice**. The notice given of the Confirmation Hearing was adequate and sufficient. No other notice need be given.

4. **Good Faith Solicitation**. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with the Bankruptcy Code (including sections 1126 and 1129 of the Bankruptcy Code), the Bankruptcy Rules (including Bankruptcy Rules 3017 and 3018), the Disclosure Statement Order, and all other applicable statutes, rules, laws, and regulations. Based on the record in these Chapter 11 Cases, the Debtors have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code, within the meaning of section 1125(e) of the Bankruptcy Code, are entitled to the protections thereof, and are entitled to the protections contained in the Plan, which protections are reasonable and appropriate under the circumstances.

5. **Satisfaction of Confirmation Requirements**. As set forth in paragraph F above, the Court concludes that the Plan satisfies sections 1122, 1123, 1129(a)(1), 1129(a)(2), 1129(a)(3), 1129(a)(4), 1129(a)(5), 1129(a)(6), 1129(a)(7), 1129(a)(9) (except possibly for O

Direct, LLC as discussed in the findings in subparagraph (h) above), 1129(a)(10), 1129(a)(11), 1129(a)(12), 1129(a)(13), 1129(b), and 1129(d) of the Bankruptcy Code.

6. **Confirmation**. The Plan should be confirmed. The terms of each of the documents in the Plan, and all exhibits, supplements and addenda thereto, are incorporated by reference into and are an integral part of the Plan.

7. **Payment of Allowed Administrative Claims and Priority Claims**. Any Allowed Administrative Claims and Allowed Priority Claims that are not paid by the Estates on or prior to the Effective Date shall become obligations of the Liquidating Trust upon the submission of an invoice to the Liquidating Trustee without the need for further notice to any Person or approval by the Bankruptcy Court.

**NOW, THEREFORE, BASED UPON ALL OF THE FOREGOING, IT IS HEREBY ORDERED:**

1. **Confirmation**. The Plan is confirmed as set forth in this Confirmation Order.

2. **Approval of Plan Transactions**. All transactions contemplated under the Plan are approved.

3. **Enforcement**. Each term and provision of the Plan, including all modifications set forth in this Confirmation Order, is valid and enforceable pursuant to its terms. The terms of each of the documents in the Plan and all exhibits and addenda thereto are approved. All parties are directed to comply with the terms thereof.

4. **Implementation of the Plan**. The Debtors, the Estates, the Liquidating Trustee and the Liquidating Trust are authorized to execute and deliver any and all documents and instruments and take any and all actions necessary or desirable to implement the Plan and this Confirmation Order and to effect any other transactions contemplated hereby or thereby. The Plan shall be implemented pursuant to Article IV thereof.

5. **Treatment of Executory Contracts/Unexpired Leases**.

(a) As provided in Article V of the Plan, except for any Executory Contract/Unexpired Lease that is or was (i) previously assumed, assumed and assigned, or

rejected by an Order of the Bankruptcy Court pursuant to section 365 of the Bankruptcy Code, (ii) assumed pursuant to this Confirmation Order, (iii) terminated or expired pursuant to its own terms on or prior to the Effective Date, or (iv) the subject of a motion to assume or assume and assign filed on or before the date of entry of this Confirmation Order, all of the Debtors' Executory Contracts and Unexpired Leases shall be deemed rejected on the Effective Date of the Plan.

(b) Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, the Plan Supplement, the Liquidating Trust Agreement, any other Plan document or this Confirmation Order (collectively, the "**Plan Documents**"), nothing in the Plan Documents (including any provision that purports to be preemptory or supervening) shall in any way operate to, or have the effect of, impairing in any respect the legal, equitable or contractual rights and defenses of the insureds or insurers under any insurance policy issued by Liberty Mutual Insurance Company or its affiliates (collectively, "**Liberty**") for the benefit of the Debtors or their affiliates or any related agreement (collectively, the "**Liberty Insurance Agreements**") or under any applicable non-bankruptcy law, including without limitation Liberty's rights of setoff and recoupment, Liberty's rights to apply escrowed amounts held by Liberty, Liberty's rights to handle, control, direct and approve settlement of claims covered by the Liberty Insurance Agreements, and Liberty's and the Debtors' rights and obligations in respect of any deductible or self-insured retention layer of any insurance policy. The rights and obligations of the insureds and the insurers shall be determined under any applicable non-bankruptcy law and the Liberty Insurance Agreements, including all terms, conditions, limitations and exclusions thereof, which shall remain in full force and effect. To the extent the Liberty Mutual Insurance Agreements are considered Executory Contracts, they will be assumed by the Debtors pursuant to the Plan on the Effective Date. Liberty acknowledges and agrees that no cure or other costs are due from the Debtors' Estates or any other party in connection with the assumption of the Liberty Insurance Agreements.

6. **Binding Effect and Validity**. Except as otherwise expressly provided in the Plan or this Confirmation Order, on and after the Effective Date, the Plan shall bind all Holders of Claims and Interests, whether or not such Holders voted to accept or reject the Plan. Subject to the terms of the Plan, upon the Effective Date, every Holder of a Claim or Interest shall be precluded and permanently enjoined from asserting against the Debtors any Claim based on any document, instrument, judgment, award, order, act, omission, transaction or other activity of any kind or nature that occurred before the Petition Date.

7. **Settlements, Releases, Injunction and Related Provisions**. The settlements, releases, injunctions and related provisions set forth in Article VIII of the Plan (collectively, the "**Releases**") are, under the circumstances presented, fair, reasonable and necessary to the successful effectuation of the Plan. Notwithstanding the foregoing or anything else in this Confirmation Order or the other Plan Documents to the contrary, the Releases (i) shall not bar the lead plaintiffs and putative class (collectively and including their counsel, the "**Class Action Plaintiffs**") in the multi-district class action styled *In re: Oreck Corporation Halo Vacuum and Air Purifiers Marketing and Sales Practice Litigation*, MDL Case No. 2:12-ML-02317, filed in the United States District Court for the Central District of California, from seeking recovery on account of their claims from any non-Debtor, and (ii) shall not bar or in any way impede Royal from (a) pursuing and asserting any and all interests, rights, claims and defenses Royal has or may have under the Royal APA, the Sale Order and/or under applicable law, or (b) commencing any action, contested matter(s) or other proceedings against the Debtors, their Estates, the Liquidating Trust, the Liquidating Trustee, or any other party, to bring the Purchased Asset Disputes before the Court for determination and/or resolution. For the avoidance of doubt, the provisions of subparagraph (i) of this paragraph do not in any way affect or alter (y) the provisions of the Royal APA and/or Sale Order including without limitation the injunctive provisions contained therein, or (z) the terms of the *Order on Motion to Enforce and Implement Sale Order* [Docket No. 1539] (the "**Sale Enforcement Order**").

8. **Involvement of Royal in Reconciliation of, Objections To, Proceedings Regarding Resolution and Settlements of Claims Potentially Impacting Make-Whole Adjustment**. Notwithstanding anything to the contrary in this Confirmation Order or the other Plan Documents, at its own expense, Royal is authorized and empowered to take all actions, including asserting all claims and defenses, that the Debtors, their Estates, the Liquidating Trustee and Liquidating Trust takes or may take after the Effective Date with respect to reconciliation and resolution of any Claims (including without limitation any Administrative Claims) that have or may have an impact on whether a Make-Whole Adjustment (as defined in the Royal APA and Sale Order) is owed, including without limitation filing objections or other pleadings or proceedings seeking disallowance, reduction, reclassification, recharacterization, equitable subordination and any other remedies or actions related to such Claims. Additionally, to the extent the Debtors have filed any objections or other proceedings regarding such Claims which remain unresolved, or the Liquidating Trustee plans to file an objection or commence any other proceeding regarding any such Claims, the Liquidating Trustee shall coordinate with Royal with respect to the relief sought by the Debtors/Liquidating Trustee to confirm that Royal is in agreement with the requested relief, has to opportunity to participate in such proceedings, has the opportunity to consent or object to any proposed settlement or resolution of such Claims, and, to the extent that Royal objects, has the opportunity to have the matter heard and resolved by this Court at a time mutually convenient to the Liquidating Trustee, Royal and the claimant.

9. **Administrative Expense Claims Bar Date; Deadline for Filing Professional Fee Claims**. The deadline for filing of Administrative Expense Claims, including Professional Fee Claims, shall be thirty (30) days after the Effective Date. For the avoidance of doubt, Royal need not file an Administrative Expense Claim to pursue the interests, rights, claims and defenses it has or may have under or with respect to the Royal APA, the Sale Order, the Purchased Asset Disputes or otherwise.

10. **Payment of Professional Fees and Expenses**. The Debtors and/or the Liquidating Trustee, as appropriate, are hereby authorized and directed to pay the fees and expenses that are due or were awarded to the any Professionals retained by Order of this Court pursuant to any interim or Final Order authorizing such fees and expenses.

11. **Payment of U.S. Trustee Fees**. All outstanding fees payable to the Office of the United States Trustee under 28 U.S.C. § 1930, including any interest due under 31 U.S.C. § 3717, that have not been paid shall be paid no later than thirty (30) days after the Effective Date or when such U.S. Trustee Fees come due in the ordinary course.

12. **Liquidating Trust**. The Liquidating Trust Agreement is hereby approved. The Liquidating Trustee is hereby appointed.

13. **Resolution of Karlen Williams Graybill Advertising, LLC's Objection**: No distributions to Holders of Allowed Claims (including but not limited to Administrative Claimants and/or Unsecured Claimants) against Debtor O Corp Corporation shall be made until the asserted administrative claim of Karlen Williams Graybill Advertising, LLC ("**KWG**") is resolved by consent of the parties or Order of this Court. Funds shall be reserved in an amount to pay up to and including 100% of the KWG's asserted administrative claim.

14. **Conflict**. In the event of any conflict between the Plan Documents (other than this Confirmation Order) and the terms of this Confirmation Order, this Confirmation Order shall control.

15. **Dissolution of Debtors as Corporate Entities.** On the Effective Date, the Debtors shall each be dissolved as a corporate entity under applicable state law without any further action by the Debtors, the Bankruptcy Court, any federal or state governmental unit, or any other person.

16. **Separate Confirmation Orders; Appeal**. This Confirmation Order shall be entered in each of the Debtors' Chapter 11 Cases and shall be effective and enforceable against each Debtor separately. To the extent any term or provision of this Confirmation Order is appealed, stayed, subsequently modified, reversed and/or vacated (on appeal or otherwise) with

respect to a specific Debtor, the terms and provisions of this Confirmation Order shall remain in full force and effect with respect to each other Debtor. Any appeal, motion and/or other proceeding with respect to this Order shall state with specificity the Debtor entities to which such appeal, motion and or other proceeding applies.

17. **Retention Of Jurisdiction**. Pursuant to Bankruptcy Code sections 105 and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Chapter 11 Cases and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) hear and determine any objection, motion, other contested matter or proceeding seeking to allow, disallow, reduce, settle, determine, liquidate, classify, estimate, subordinate, recharacterize, and/or establish the priority or secured or unsecured status of any Claim, including the resolution of any application or request for payment of any Administrative Expense Claim;

(b) hear and determine all Professionals' applications for compensation and reimbursement of expenses incurred in the Chapter 11 Cases;

(c) hear and determine any and all adversary proceedings, motions, applications, and contested or litigated matters and consider and act upon the compromise and settlement of any Claim against the Estates;

(d) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Plan Documents, including disputes arising under agreements, documents or instruments executed in connection therewith;

(e) hear and determine any proposed modifications of the Plan Documents, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(f) hear and determine any matters arising in connection with or relating to the Plan Documents, or any contract, instrument, release, or other agreement or document created in connection with the Plan Documents;

(g) hear and determine any matters relating to, and enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and

rulings entered in connection with the Chapter 11 Cases, including without limitation the Sale Order and the Sale Enforcement Order;

(h) hear and determine any matters related to: (a) the assumption, assumption and assignment or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; and (b) whether a contract or lease is or was executory, expired, terminated, assumed and/or assigned;

(i) hear and determine any motions, adversary proceedings, contested or litigated matters and any other matters, and grant or deny any applications that may be pending on the Effective Date;

(j) hear and determine all matters related to the property of the Estates or the Debtors and Liquidating Trust Assets (including without limitation the Purchased Asset Disputes), including without limitation any proceedings or contested matters filed and/or commenced after the Effective Date;

(k) hear and determine matters relating to the Debtors' sale of property pursuant to sections 363, 1123 or 1146(a) of the Bankruptcy Code;

(l) hear and determine or otherwise resolve matters concerning state, local, and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(m) hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

(n) issue injunctions, enter and implement any orders, and take any such actions (or refrain from taking any such action) as necessary or desirable to implement, enforce, resolve and/or settle any and all of issues listed and discussed in the above subparagraphs of this paragraph or otherwise in the Plan Documents;

(o) hear and determine or otherwise resolve matters concerning the Sale Enforcement Order; and

(p) enter a final decree closing the Chapter 11 Cases.

18. **Resolution of the Non-QVC Purchased Asset Disputes**. On or before November 25, 2014, subject to extension by consent of the Liquidating Trustee, Royal shall

provide the Liquidating Trustee with a reasonable, good faith estimate of its asserted claim as a result of the Purchased Asset Disputes other than the QVC Litigation (the "**Non-QVC Purchased Asset Disputes**"). The Liquidating Trustee shall reserve such amount pending resolution of the Non-QVC Purchased Asset Disputes. If the parties are able consensually resolve the Non-QVC Purchased Asset Disputes, they may do so without further notice to the Court or any other party, and without further order of the Court (although they may submit an agreed order to the Court for immediate entry if any party so requests). If the parties are unable to consensually resolve the Non-QVC Purchased Asset Disputes, any of the parties may file a motion to bring such Non-QVC Purchased Asset Disputes before the Court for resolution at a time mutually acceptable to all of the parties.

19. **Filing and Recording**. This Confirmation Order (a) is and shall be effective as a determination that, on the Effective Date, all Claims and Interests existing prior to such date have been unconditionally released, discharged and terminated as set forth in the Plan, and (b) is and shall be binding upon and shall govern the acts of all entities including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required, by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any document or instruments. Each and every federal, state and local government agency is hereby directed to accept any and all documents and instruments necessary, useful or appropriate (including Uniform Commercial Code financing statements) to effectuate, implement and consummate the transactions contemplated by the Plan and this Confirmation Order without payment of any recording tax, stamp tax, transfer tax or similar tax imposed by state or local law.

20. **Authorization to Effectuate the Plan**. The Debtors and Liquidating Trustee are authorized to take all actions to effectuate the Plan after entry of this Confirmation Order. The Debtors and Liquidating Trustee are authorized and directed to execute, acknowledge and

deliver such deeds, assignments, conveyances, and other assurances, documents, instruments of transfer, Uniform Commercial Code financing statements, trust agreements, mortgages, indentures, security agreements and bills of sale and to take such other actions as may be reasonably necessary to perform the terms and provisions of the Plan, all transactions contemplated by the Plan and all other agreements related thereto.

21. **Service of Order**. Within three (3) Business Days after the entry of this Confirmation Order, the Debtors shall cause to be served a copy of this Confirmation Order on (i) all Holders of Claims and Interests, (ii) the U.S. Trustee, and (iii) all parties who filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002 in the Chapter 11 Cases.

22. **Notice of Effective Date**. Within three (3) Business Days after the occurrence of the Effective Date, the Debtors shall File with this Court a notice stating that the Effective Date has occurred and such other matters as the Debtors deem appropriate or as may be ordered by this Court.

23. **Objections Withdrawn or Overruled**. All objections to Confirmation of the Plan that are not withdrawn or resolved herein or on the record of the Confirmation Hearing are hereby overruled on the merits.

24. **Record Closed**. The record of the Confirmation Hearing is closed.

25. **Final Order**. This Confirmation Order is a final order and the period in which an appeal must be filed shall commence upon the entry hereof.

26. **Waiver of Stay**. The 14-day stay of entry of this Confirmation Order provided for in Bankruptcy Rule 3020(e) is hereby waived. Notwithstanding Bankruptcy Rules 6004(h), 7062, or 9014, the terms and conditions of this Confirmation Order shall be immediately effective and enforceable upon entry hereof.

27. **Change of Case Caption**. Upon the Effective Date, the name change of the Debtors as set forth below shall be reflected on the Court docket. The Clerk of the Court and all other parties shall make the necessary changes to reflect the change of the name and caption of

these Chapter 11 Cases, and all parties shall use the following caption for all pleadings filed in the Chapter 11 Cases after the Effective Date:

|  |  |
|---|---|
| In re:<br><br>O CORP CORPORATION, *et al.*,[FN]<br><br>           Debtors. | Chapter 11<br><br>Case No. 13-04006<br>(Jointly Administered)<br><br>Judge Lundin |

With the following footnote: FN: The Debtors are as follows: O Corp Corporation f/k/a Oreck Corporation, ASP O Inc. f/k/a ASP Oreck, Inc., O Direct, LLC f/k/a Oreck Direct, LLC, O Merchandising, LLC f/k/a Oreck Merchandising, LLC, O Homecare, LLC f/k/a Oreck HomeCare, LLC, O Call Center, LLC f/k/a Vecteur, LLC, Oreck Holdings, LLC f/k/a Oreck Holdings, LLC, O Manufacturing Company f/k/a Oreck Manufacturing Company, and O Sales, LLC f/k/a Oreck Sales, LLC.

**This Order Was Signed And Entered Electronically As Indicated At The Top Of The First Page**

APPROVED FOR ENTRY:

| | |
|---|---|
| */s/ William L. Norton III*<br>William L. Norton III (TN 10075)<br>Alexandra E. Dugan (TN 30420)<br>BRADLEY ARANT BOULT CUMMINGS LLP<br>1600 Division St, Suite 700<br>Nashville, Tennessee 37203<br>Tel: (615) 252-2397<br>Fax: (615) 252-6397<br>bnorton@babc.com<br>adugan@babc.com<br><br>*Counsel for the Debtors* | **LOWENSTEIN SANDLER LLP**<br>Sharon L. Levine, Esq.<br>S. Jason Teele, Esq.<br>Nicole Stefanelli, Esq.<br>65 Livingston Avenue<br>Roseland, New Jersey 07068<br>Tel: (973) 597-2500<br>Fax: (973) 597-2400<br><br>- and –<br><br>By: */s/ Daniel H. Puryear*<br>Daniel H. Puryear; No. 18190<br>102 Woodmont Boulevard<br>Woodmont Centre, Suite 520<br>Nashville, TN 37205<br>Tel: (615) 630-6601 |

Fax: (615) 630-6602

*Counsel to the Official Committee of Unsecured Creditors*